I am Charles Leach. I am here on behalf of Mark and Chelsea Lindquist with regard to the Ames v. Lindquist in Pierce County matter. At this particular time I would like to reserve five minutes for rebuttal. This case has a variety of components to it as I'm sure your honors has seen the records fairly extensive. In particular for our position in this case there are three prongs essentially that I would wish to review with you. The first is the issue of the sufficiency of the pleadings in the matter as we're here on appeals related to a 12b6 motion. The second component would be the discussion of absolute immunity and the third being qualified immunity. Though I'm sure that at some point we will jumble them up a little bit during the course of our discussion because of the nature of the pleading. This case was heard on a 12b6 motion primarily focused on the record of the second amended complaint or the SAC as we've been referring to it in our pleading. This case arises from primarily the actions alleged actions of Mark Lindquist related to his position as the elected prosecutor of Pierce County. The primary fact pattern that is at issue we would submit is the designation of potential impeachment evidence as a result of civil actions that were either in a court of law related to actions brought against Mark Lindquist and or Pierce County but also specific to as well as various other reports that were generated. Let me just, I need to be focused a little bit here. It's been a long week but you're talking about his substantive due process argument now? No, I'm talking about the sufficiency of the pleadings and the aspects of the determination of PI is what I'm starting out with, Your Honor. Okay, but doesn't that get us, aren't you getting us to the district court's dismissal of his due process, his procedural and substantive due process claims? No, actually we're seeking basically the decision that qualifies... I'm sorry, I'm getting confused here. Sure, I'm representing Mark Lindquist and we're seeking the application of absolute immunity or qualified immunity. Right, that's right. And the district court denied you. Correct. That's right. Okay, I have to get my head into this. Well, there's a cross appeal, which is I think why we probably initially both were looking dumbfounded at the dais when we came up and started talking. So my particular argument is focusing on the designation of PI, which is entitled under the Brady and its progeny, a lot of deference obviously for... But this didn't happen in a criminal case, right? Correct, but I believe the authority... I understand the allegation to be that these affidavits by these four members of the office... Three members, two affidavits from one person, so four total. Whatever, four affidavits, whatever they were, were submitted in the civil case... Correct. ...that Mr. Ames had brought against the county and Superior Court. Correct. Is that right? Correct, which we believe under Flood as well as Fry and a variety of the cases that we've cited falls within the... Let me ask you this. The district court said you don't get... Prosecutorial immunity or absolute immunity for the claims that arise out of those allegedly false documents. Correct, under the First Amendment there was a determination that it was sufficient to surpass the 12b6 motion. Right, but the district court said no absolute immunity for Mr. Lindquist on the claims that remained the retaliation, 1983 retaliation claim. Correct. Right? Correct. Okay, so why was the district court wrong? Well, I think first and foremost... Because you can't tell... Because as I understood it, Mr. Lindquist, he was a defendant in the case, but nonetheless he was the county prosecutor, which covered both civil and criminal, and then he retained this Patterson firm to defend the county against Lindquist, against Ames' suit in Superior Court. Correct, the civil suit. Right. So what did Lindquist... How was Lindquist acting as a lawyer for this county? Well... He was a defendant. He's a defendant, but Your Honor, as I believe you're aware and we're all aware, they are often sued in the representative capacity, which is what occurred here, and the case law... But did he do anything more in that litigation other than hire the Patterson firm to represent the county? Not technically. Then why does he get absolute immunity? Well, I would say, just based on your question, because he is a sitting prosecuting attorney, it's within his rights to go ahead... Absolute immunity is based on functional analysis. Well, it is. You have to view it in context, certainly. And in this particular case... So what is the function that he was performing that entitles him to absolute immunity? Well, he's acting within the role of managing litigation and defending the county... But there's nothing in the record that says that he was managing this litigation other than he hired this firm. Well, I guess to flip it around, Judge, is that according to that fact litigation, there has been no connection between him and the declarations that were submitted. So according to this case, they're drawing a nexus between his role... Well, that's another issue. But the question here is absolute immunity is based on a functional analysis. And he well may be entitled to absolute immunity, but this was decided not on a summary judgment record, but on a 12B6, and you can't really tell what he was doing in this case. What we know is they allege that he hired the Patterson firm. And you say, well, we get absolute immunity from everything that may fall from that. Well, that's what... I don't think that's... You know, you may ultimately... He may have been in the trenches with them and, you know, discussing strategy and telling them what to do and what not to do and, you know, get these affidavits and, you know, then he's acting like he's an advocate. But all we know is that he was an administrator who hired this firm. They're representing the county. I don't know how that... When you look at it functionally, I don't know how he's entitled to absolute immunity. In the context of absolute immunity, he is. I would submit to you that regardless of whether he was actively involved in the defense of the county in that lawsuit or whether he was a person who was distant and not involved, we would submit that absolute immunity applies because those fall all within the prosecutorial administration of litigation, not just him like hiring decisions and everything else related to that. So I think first and foremost on the analysis for absolute immunity that that would apply. Absolute immunity does not apply at this point, clearly under the case law, in just a criminal context. It's been applied to tax actions. It's been applied to... Correct. Except for fact findings. Correct. Correct. And so in this particular case, the allegations in the complaint... Now, going to your argument or your position on... I don't have any position. No, I understand. I'm trying to understand your position. I understand, Judge. Going to your discussion of the specific merits of how the absolute immunity is to be analyzed, one of the issues that we have on appeal is the sufficiency of the pleading as to exactly that issue, which under the Al-Kid cases, there's a certain heft, as we know, that has to be applied there. But it's your burden to establish your entitlement to absolute immunity. Correct. And you could have waited until a motion for summary judgment, then you could have put everything in about what he did in this litigation. Well, and that's in light of the sufficiency of the pleading. We believed at that time it was the opportune time, and that's what... So you're also seeking qualified immunity. Correct. If you don't get... If you're not entitled to absolute immunity, you're seeking qualified immunity, right? Which goes into the specifics of the second amended complaint and the sufficiency of the pleading, because we would submit that a variety of the components are what are the clearly established rights that Lindquist, if indeed taking the evidence in the light most favorable to the plaintiff, was involved in some fashion in these declarations or other decisions, what would he have known or reasonably known was a violation of a constitutional right of the plaintiff? And in the record that we have before us, we submit that's not clear. There's allegations. It's quite a large complaint with a large set of facts, but certainly... Goes on forever. Correct. There's certain aspects of it where you have the statement to the press, where it's not particularly mentioned. There is the internal investigative functions conducted by Pierce County Human Resources, which my client, the Lindquist, don't have necessarily involvement in because he was working for a different agency and was involved in different specific... What do you understand to be the retaliatory... Alleged retaliatory conduct on the part of Lindquist? The alleged retaliatory conduct is a designation of the pie, potential impeachment evidence. And the pursuit, I guess, the alleged pursuit of that. It's not the directing the filing of the affidavits in the Superior Court? Because the protected activity, as I understood it, was the filing of the lawsuit against the county. And then the alleged retaliatory... See, I'm trying to... The complaint's difficult to follow. Sure, I understand that. And even the district judge made that comment. Correct. And as I understood, that the protected activity was filing the lawsuit against the county, Ames versus... What's the county? Pierce County? Pierce County. Pierce County. And that the retaliation for that was filing these false affidavits, and that Lindquist had a hand in it. Allegedly false affidavits. Lindquist had a hand in that. Well, and what we would submit is the alleged retaliatory action falls within, first of all, absolute immunity because of his role as a prosecuting attorney, and secondly, qualified immunity because he was... Counsel, let me ask you a question. If, in fact, he asked people to submit false evidence, false affidavits, wouldn't it be clearly established that that's wrongful? We would be wrongful. Yes, I would believe it would be wrongful. However, I think under Imbler there's still an analysis of even whether absolute immunity would apply in that context. I think, secondly, in the record, looking at the sufficiency of the pleadings, I don't believe it's clear, even based on a common sense analysis, that that has been alleged with sufficient heft, in part because of the drawing of Lindquist to fulfill the obligations of producing potential impeachment evidence. So we believe that there certainly are competing rights involved here, but in this particular case, the absolute immunity afforded the prosecuting attorney to go ahead and draw the conclusions as to the existence of Pai, he at that point has no choice. And the declarations that were submitted were not submitted in the evidence, looking at it willy-nilly. All right. Well, thank you, Counsel. I think you answered my question. Did you want to reserve time for rebuttal? I reserved five minutes for rebuttal. Thank you, Judge. I think the clock indicated that you only have a little more than two minutes left. So we'll give you an extra minute. But for planning purposes, don't assume more time than . . . Thank you, Your Honors. My name is Joan Mell. I'm appearing on behalf of Detective Michael Ames. I would like to reserve seven minutes for rebuttal. We're here before the court asking the court to affirm the immunity decision by the district court. We're asking the court to reverse as to due process and reinstate those claims as to each Pierce County and Mark Lindquist. To help add clarity to the overarching scheme here as to immunity, Detective Ames would describe Lindquist's misconduct as a pervasive interference with his ability to perform his investigative functions. By way of that, we have a series of specific case examples where Detective Ames was simply trying to do his job, but yet Prosecutor Lindquist was motivated by a personal desire to have, for whatever reasons, these cases go in a particular direction, and had his office, and he individually took action to course an outcome that was contrary to Detective Ames' investigatory function. You're talking about the criminal cases. I'm talking about Nissen, I'm talking about Kopachuck, and I'm talking about Dahlstein. So there is a history of a pattern with Mark Lindquist where he interfaced with Detective Ames, and Ames came to conclusions that he didn't like, and then he took coercive action to get him back to where he wanted him to be. So it's true. Okay. So we have this lawsuit, Ames v. the County and Lindquist. The name-clearing case? This, no, Ames, this Federal lawsuit. This lawsuit. This lawsuit. Correct. And your complaint is very long. It's not easy to follow. And in the end, the district court said, well, looks like we've got a First Amendment claim that survives. Correct. And some related state law claims. Correct. Right? And you're going to get to the due process stuff. Correct. So on the claim that the judge said survives, he said, Mr. Lindquist, they sought absolute immunity, get him out of the case, and the judge said no. Okay. So my question to you, you know, just because it's a, absolute immunity applies not only in criminal cases, but it applies in civil cases as well. When the state attorney or the government attorney is working as an advocate, closely related to the court. Right? Correct. Now, what we know, you allege that he hired the Patterson firm, right? Correct. Now, my question to the other side was, we don't really know yet what Ames' role, what Lindquist's role was in the litigation involving Ames versus Pierce County. Correct. Right? Correct. Well. Now, if Ames was actively, I mean, if Lindquist was actively involved in that litigation, supervising the firm that he retained, acting as a, you know, counsel for the county, why wouldn't he be entitled to absolute immunity? Well, that's a supposition that would be impractical and impossible as a matter of law because he hired an outside law firm. So there would have been a conflict of interest for him acting in that role. And as a matter of fact, we don't have him acting in that role because he's not the declarant. He's in the background doing his nefarious deeds to course a particular outcome that's disparaging to Ames. Lindquist continually gets outside of his lane. He doesn't pick a lane and stay in it, and he doesn't stay in it within his prosecutorial role. So the question as to whether or not he would be entitled to it is one, he wouldn't be entitled to it because that wasn't his role. But we don't know that yet. This case, this comes to us on the pleadings and all that's in the pleadings as we know is that he was alleged to have hired the Patterson firm. That's what we know. And the allegations are that he was not in an advocacy role. So the district court was correct. So we prevail on that issue. All right. So then he, now he's alleging, wow, if I don't get absolute immunity, I should get qualified immunity. Well, why would you get qualified immunity when the law has been well established for all time? We lawyers don't get to lie and we lawyers don't get to tromp on the rights of detectives who are attempting to do their job. The retaliation component under O'Brien. General principle is well established, but the Supreme Court keeps saying, you know, you got to look at the exactly how you went about your dirty deeds. You have to be a little bit more. I think they've, they've criticized us or reversed us. We gave him, if we made an immunity ruling based on a general, two, two generalist standard.  I think that the, the question before this court, I think this court has to take Kalina and Botelho and decide how far Rose going to go to Botelho or go to the less controlling authority of Barrett. So you get down to this nitty gritty discussion about what is the conduct at issue and the Mark Lindquist continues to try to narrowly say,  this was a declaration on the prosecutor. This is a declaration on the prosecutor. The conduct is expansive in the declaration in the complaint because the conduct was not just the filing of the declaration or just the placement of the declaration on the list. There is a fundamental dishonesty issue that drives the discussions as to what, what in fact dishonest, the role of dishonesty has in this, but there's also several publications that go beyond the purely prosecutorial role in, in the Copa check case when detective Ames investigates as his, it was his duty to do as Cooper Smith sound found was his good faith obligation. Linda Lindquist responds with a publication in the media that says, I am not prosecuting this case because detective Ames did it wrong. When, when we get to the Dalston case, similarly, we have prosecutor Lindquist and, and his deputies promulgating testimony that's dishonest and then publishing it in the media, publishing it on Facebook and, and liking it on Facebook and disseminating it broadly. And I wanted to give a specific example. If we look just at the retaliatory or the vindictive lawsuit filed in Dalston, that was initiated by a probable cause statement by Jared Osler. That's at document 46, page 4430. I've got copies here that I can, but anyway, the, the, the testimony in there, it's a probable cause statement. We know exactly from Kalina. I think Kalina is very important case. We know from Kalina that a prosecutor can't set forth a disstatement of probable cause describing a bunch of conduct that's his or her own testimony and then have absolute immunity for that. In this particular probable cause statement, the DPA goes beyond the bounds and the four corners of what was contained in any investigative reports and starts describing things only he could know. So he's testifying based on his personal knowledge. Well, what happens with this probable cause statement? Not only is it published in the criminal case, no, it is taken by Lindquist and Osler, put on Facebook and disseminated broadly as a criticism of Ames performance. They're actually blaming Ames in this probable cause statement for Lynn Dalcy not being charged for child pornography. It's wholly erroneous. It's completely untrue, but it's the prosecutor's testimony. Mark Lindquist. I'll get back to what Judge Gould's comment was. How does this get back to, is the law clearly established for purposes of qualified immunity? The law is clearly established under O'Brien that you can't retaliate. That's the whole reason for doing this. So if you have to try to describe, disparagements and defamation are clearly established. That's what this is. Okay. That's what this is. You also had a cross appeal on your due process. Due process is essential because now you have this process. Let's assume that you have a protection for dissemination of braiding material, but how does a law enforcement officer challenge the credibility of testimony or declarations, false statements by the prosecutor's office itself? Ordinarily and by policy,  to give him an IA hearing and process to be heard. That wasn't afforded him here because it was generated by the prosecutor's office and they controlled whether or not they were going to give him a name clearing hearing. They denied it. He asked. He asked. They refused. We go to court to get it. They say, you don't have the proper vehicle for doing it. That leaves us this court. That leaves us a constitutional premise that due process exists for somebody whose name has been disparaged, who loses his job because he can't continue to perform. So we have the stigma plus. Is his decision to leave the county all related to this?  Yes. Yes. The kicker. PIE or whatever it's called. The PIE. The refusal to give him an opportunity to clear his name and the continued interferences with his law enforcement investigations and the unfettered discretion given to Lindquist to continue to do that in the future. No matter what he did, if it got in the crosshairs of Lindquist's political motivations, he would be challenged, questioned, defamed, disparaged, told he wasn't doing his job right in a very public way. So the moment that he said, I cannot do this anymore was the moment that Judge Hull ruled against him in the name clearing case or in the Ames v. Pierce County case. And Pierce County throughout those proceedings at Lindquist's direction had refused him name clearing hearing opportunities, was trying to sanction him to ruin him for asking for a name clearing hearing, for seeking a judicial remedy. He has no other alternative remedy, but there has to be a way when somebody with that much power declares you to be dishonest. Who's supposed to give him the hearing, Lindquist or the county? Well, that would be at Lindquist's direction. It would be the county. Both of them have the obligation. Is the county a defendant here? The county is a defendant, and the county is up on appeal with regard to the cross appeal. I don't know about the whole title, and it's my error for have not caught it earlier before filing my cover page on my brief. But the counter appeal is as to all defending parties. The order was brought in that manner. Somehow the caption got parsed out in a way that doesn't make sense to me. There was another due process claim, procedural due – I mean the substantive due process claim. Substantive due process is when there's no substantive basis for – No, about not being able to pursue his chosen career as a – Oh, oh, oh, I did want to touch on that. I don't understand why the court says – missed the fact that he's not working for Pierce County in a law enforcement capacity. He's not working for Pierce County at all. He worked for another county. The evidence we will offer at trial and the way we plot it is that's not going to happen. There's plenty of content within that pleading that says, I'm forever foregoing a law enforcement career. Is he giving it up or is it he can't get hired? He can't get hired. We'll have testimony to that effect. There's testimony like that in published opinions already. I think it's the Clevenger case. Pardon? Never mind. There's a Clevenger case that cites to expert testimony that says that. So it's not an option. Brady listing is blacklisting. I think this Court needs to treat a Brady list as a blacklist. It is. Okay. I'm not sure what does that mean. I'll step down and reserve whatever I've got left. Thank you. Your Honors, with regard to the characterization in the record, which I think it's very important that the record is significant. There's quite a number of pages that are in it. But I think review of the record in specific will illuminate some of the insufficiencies and we would respectfully disagree with the characterizations that have been offered before you by Mr. Ames. Once the designation of potential impeachment evidence is made, it doesn't mean automatically there's a blacklist. It doesn't mean automatically that that person is definitively barred from working. It doesn't mean they're specifically not to be called as a witness. What does that mean in practice, though? It means that if you're a prosecutor, you know that you have Mr. Ames as your. Correct. As an investigating officer. As an investigating officer. Sure. And he's going to take the stand and you have this information about his credibility. You have to provide it to the other side. You have to give it to the defense, right? Correct. Correct. To preserve the rights of the defendants under the Constitution. And then they make the. So, you know, you have these prosecutors who, you know, want to win, although they're supposed to do. It's not supposed to be their objective. Well, they're officers of the court. Right. They're sworn to uphold the Constitution. Why would they want to give their. Why would the police and the prosecutors want to see that Mr. Ames or a police officer in Mr. Ames' position, you know, why would they want to have to deal with him in court? Because that's their job. That's part of the administrative function of being a prosecuting attorney. Well, you know, the police can just say, well, give this case to another police officer. Don't give it to me. Well, certainly under the case law, they're allowed, prosecutors, under absolute immunity, they're allowed to go ahead and say, okay, we don't want to work with that person anymore. Now, where the cases get far afield and where there is not absolute immunity are two times when basically is when they go ahead and they act like in the Castillo case where they specifically go ahead and engage in some level of targeting, sabotage as to particular individuals working for a particular individual. Once somebody is designated as potential, that's the key word here, potential impeachment evidence. It's not a blacklist. It's not like the lorry list that's in the New Hampshire cases that have been cited. It's not like the California case where someone's put on a child abuse registry and there's an issue of whether there's absolute immunity or qualified immunity if they're part of that. This is an action, and the underlying court cases specifically found, designed to preserve the rights of criminal defendants to a fair trial. There's no discretion here on the part of Prosecutor Lindquist or his deputies in this regard. And with regard to the application of PI, I think in the record at 272 and 301, they're the PI letters that give them the opportunity to respond. Briefly with regard to the due process allegations, he was not deprived of a name-clearing hearing in that he was allowed to go ahead and continue to react to the evidence. He was given notice in letters that PI was going to be offered. He was not afforded a louder mill because he resigned his position. He was the one who voluntarily gave up his position. And one thing to note just factually, and I'll stop here in a moment, is that he did not work for Lindquist. He worked for a separate agency. His resignation letter specifically was directed to the sheriff. Lindquist is far afield, and we would submit, looking at the sufficiency of the pleadings, that there's not a sufficient nexus to hold him accountable and that absolute and qualified immunity applies. Thank you, Your Honors. Thank you, Counsel. Did you want to give her an extra minute? I think she should be allowed a little time because of there's an appeal and a cross-appeal. So let's add a minute. I gave you an extra minute. You're both making excellent arguments, and I wish we could give you lots more time, but unfortunately our schedule today requires us to keep it pretty close. Detective Ames wants the court to understand and appreciate the conundrum he was in relative to the Dalsing case. He was trying to fulfill his Brady obligations in the civil Dalsing case where he learns that the exculpatory evidence that he had, that he had turned over, had not been turned over. The prosecutor, Richmond, silences him during his deposition. That's not a protected activity. Under Burns, giving of legal advice is not a protective activity. So once he's silenced in that regard and he seeks to have it investigated administratively in a whistleblower complaint, who takes control over the investigation? Oops, well, that's the same legal office. Let's have the prosecutor's office control the investigation, pick Mr. Coopersmith, who I do not defame in any way. I know who he is and he's a good attorney, and engaged in the process. But all of the witness testimony was controlled by Lindquist's office. Lindquist was dishonest about his conduct to Mr. Coopersmith, and we intend to prove that. The findings were consistent with the allegations that Mr. Ames had alleged, although the scope of what they investigated was limited. They didn't even investigate his complaints about dulsing. So the kind of conduct we're talking about is not just forward declarations. It's the whole systemic approach where Lindquist is not playing by the rules. He's acting in an administrative capacity in controlling a whistleblower investigation. He's got people and directing people to testify, which is excluded under Colina. False statements shouldn't be protected anyway. We have the administrative duties about trying to interfere with his employment, et cetera. So it's this whole – it's the lane change problem. That's the best way I can explain it. And there's a series of cases that allow us to parse through the conduct that derivated from the prosecutor's lane and take corrective action under the First Amendment as well as due process. Do you have a procedural and a substantive due process claim? Yes, Your Honor, I do. Or he does. Excuse me. And was only the substantive due process claim that was dismissed? I read it as both. Okay. As to both, too, as to both Lindquist and the county. Thank you. You know, Your Honors, we would ask that you affirm the absence of immunity to protect Lindquist. We would ask that you reinstate the due process claims in their totality as to both. Thank you. Thank you very much. The Court appreciates very much the excellent arguments on both sides of this case. And the Ames case shall now be submitted. The Court will take a 15-minute recess. Thank you.
judges: Gould, Paez, Jack